UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAUL STEPHANSKI,

                              Plaintiff,

              v.

ROXANNE ARNONE,
KEITH HAEFNER,
EDWARD CONDON, and
JAMES LIBERATORE,

                              Defendants.

_____

**REPORT**
**and**
**RECOMMENDATION**

**04-CV-552A(F)**

APPEARANCES:              PAUL STEPHANSKI, *Pro Se*
                         99-B-2439
                         Upstate Correctional Facility
                         309 Barehill Road
                         Malone, New York 12953

                         ANDREW M. CUOMO
                         Attorney General, State of New York
                         Attorney for Defendants
                         MICHAEL A. SIRAGUSA
                         Assistant Attorney General, of Counsel
                         107 Delaware Avenue
                         Fourth Floor
                         Buffalo, New York 14202

## JURISDICTION

       This case was referred to the undersigned by Honorable Richard J. Arcara on

February 18, 2005 for pretrial matters, including report and recommendation on

dispositive motions.  The matter is presently before the court on Defendants' motion for

summary judgment (Doc. No. 24), filed April 6, 2006.

## BACKGROUND

Plaintiff Paul Stephanski ("Plaintiff"), proceeding *pro se*, commenced this civil rights action on July 27, 2004, alleging that while incarcerated at Attica Correctional Facility ("Attica" or "the correctional facility"), Defendants Sergeant Roxanne Arnone ("Arnone"), and Correctional Officers Keith Haefner ("Haefner"), Edward Condon ("Condon"), and James Liberatore ("Liberatore") (together, "Defendant Correctional Officers"), subjected Plaintiff to excessive force and acted with deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.  Plaintiff further asserts Defendant Arnone, as the superior officer in charge of the Defendant Correctional Officers, failed to intervene to protect Plaintiff from the alleged use of excessive force.  Defendants' answer to the Complaint was filed on January 10, 2005 (Doc. No. 8).

According to the April 28, 2005 Scheduling Order (Doc. No. 15), the deadline for discovery was December 30, 2005.  Nevertheless, on March 22, 2006, Plaintiff filed Requests for Admissions of Defendants Edward Condon (Doc. No. 20), James Liberatore (Doc. No. 22), and Keith Haefner (Doc. No. 23) ("the Requests for Admissions").  On April 6, 2006, Defendants filed the Declaration of Assistant Attorney General Michael A. Siragusa in Response to Plaintiff's Requests for Admissions Addressed to Defendants Condon, Haefner and Liberatore (Doc. No. 31) ("Siragusa Response Declaration").

Also filed on April 6, 2006, was Defendants' instant motion seeking summary judgment (Doc. No. 24) ("Defendants' Motion"), along with supporting papers, including Defendants' Statement of Undisputed Facts (Doc. No. 25) ("Defendants' Statement of

2

Facts"), the Declaration of Roxanne Arnone (Doc. No. 26) ("Arnone Declaration"), with attached exhibits A through E ("Arnone Declaration Exh(s).__"), the Declaration of James Liberatore (Doc. No. 27) ("Liberatore Declaration"), with attached exhibit A ("Liberatore Declaration Exh. A"), the Declaration of Edward Condon (Doc. No. 28) ("Condon Declaration"), with attached exhibit A ("Condon Declaration Exh. A"), the Declaration of Keith Haefner (Doc. No. 29) ("Haefner Declaration"), with attached exhibits A through C ("Haefner Declaration Exh(s). __"), and a Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. No. 30) ("Defendants' Memorandum").

In opposition to summary judgment, Plaintiff, on May 22, 2006, filed a Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 34) ("Plaintiff's Response"), with attached exhibits 1 through 8 ("Plaintiff's Exh(s). __"), Plaintiff's Declarations in Opposition to Defendants Haefner, Condon, Liberatore, and Arnone's Declarations (respectively, Doc. Nos. 35 ("Plaintiff's Declaration in Opposition to Haefner's Declaration"), 36 ("Plaintiff's Declaration in Opposition to Condon's Declaration"), 37 ("Plaintiff's Declaration in Opposition to Liberatore's Declaration"), and 39 ("Plaintiff's Declaration in Opposition to Arnone's Declaration")), Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 38) ("Plaintiff's Declaration"), and Plaintiff's Opposition to Defendants' Statement of Undisputed Facts (Doc. No. 40) ("Plaintiff's Opposition to Defendants' Statement of Facts").

Oral argument was deemed unnecessary.

Based on the following, Defendants' motion should be DENIED as to Plaintiff's

excessive force and failure to intervene claims, and, as to the deliberate indifference to serious medical need claim, should be GRANTED insofar as Plaintiff has failed to sustain the objective component of the claim or, alternatively, summary judgment should be DENIED insofar as a genuine issue of material facts exists as to the subjective component of the claim or, as a further alternative, summary judgment based on qualified immunity should be DENIED.


## **FACTS**[1]

At dispute in this action is the manner by which Defendants removed Plaintiff from cell BW-23, located in Attica's Special Housing Unit ("SHU") on February 28, 2004.  According to Plaintiff, at 8:15 A.M. on February 28, 2004, other SHU inmates directed lewd and vulgar comments toward Defendant Sergeant Roxanne Arnone ("Sgt. Arnone") as she conducted rounds on the BW gallery of Attica's SHU.  In response to the comments, Sgt. Arnone lost her temper, called for assistance from Defendant Correctional Officers Edward Condon ("Condon"), Keith Haefner ("Haefner"), and James Liberatore ("Liberatore"), and Haefner instructed Plaintiff to place his arms through the cell's gate.  Plaintiff did not comply with the order, but requested to speak with the Lieutenant on duty because Plaintiff had done nothing to provoke the prison staff and was afraid he would be beaten.

Plaintiff maintains that instead of permitting Plaintiff to speak with the Lieutenant on duty, Defendants crashed open the gate to Plaintiff's cell "with such force it

---

[1] Taken from the pleadings and motion papers filed in this action.

terrorized [Plaintiff]."  Complaint ¶ 5.  Plaintiff retreated from Defendants and was hit and knocked back, and his head grazed the toilet before it slammed to the cell's concrete floor.  According to Plaintiff, Defendants twisted and turned Plaintiff onto his stomach, and one Defendant jumped onto Plaintiff's back, forcing his knee into Plaintiff's spine, while another Defendant smashed Plaintiff's face into the concrete floor.  Plaintiff's arms were twisted behind his back and placed in mechanical restraints which were so tight Plaintiff's hands became numb.  Defendants held Plaintiff to the floor by his neck, warning Plaintiff not to move, and then released their hold on Plaintiff who lay on the floor "terrified, confused and dizzy."  Complaint ¶ 7.  Defendants then kicked, stomped and beat Plaintiff who attempted to curl into a fetal position to protected his chest and ribs.  When Defendants ceased beating Plaintiff, they jerked Plaintiff up by the handcuffs and made Plaintiff, who was still dizzy and experiencing intense pain in his lower back, knees and other parts of his body, walk off the gallery to be placed in a cage and searched.  Plaintiff maintains that despite multiple requests for medical assistance, he was denied any medical attention for his injuries.

In contrast, Defendants deny that inmates in the BW gallery where directing any lewd and vulgar comments toward Sgt. Arnone, maintaining instead that while Sgt. Arnone was conducting her rounds in Attica's SHU, she detected cigarette smoke coming from cell BW-23 in which Plaintiff was housed.  Because tobacco products are contraband in SHU, Sgt. Arnone directed Plaintiff to come to the front of the cell to facilitate Plaintiff's removal from the cell which was to be searched for contraband. When Plaintiff refused Sgt. Arnone's direct order by walking to the back of the cell, Sgt. Arnone called for assistance and Condon, Haefner, and Liberatore responded.  Sgt.

Arnone directed Condon, Haefner and Liberatore to remove Plaintiff from cell BW-23 because of the cigarette smoke, after which Haefner was to search the cell for contraband.

Plaintiff was ordered to come to the front of his cell and place his hands through the chute to allow mechanical restraints to be applied to his wrists.  Plaintiff refused the order and, instead, remained standing in the back of the cell.  Condon, Haefner and Liberatore, at Sgt. Arnone's instruction, unlocked the cell door, entered the cell, and applied mechanical restraints to Plaintiff's wrists before removing Plaintiff from the cell and leading Plaintiff, who walked without any difficulty under his own power, down the gallery to a secure holding area while the cell was searched.  Upon searching Plaintiff's cell, Haefner found two pieces of latex glove tied like balloons and containing tobacco, rolled cigarettes, matches, rolling paper and cellophane, for which a contraband receipt was issued.  Defendant Haefner also completed an Inmate Misbehavior Report, Haefner Declaration Exh. A, charging Plaintiff with violations of DOCS rules 106.10 (obeying a direct order); 113.22 (possession of authorized items in an unauthorized area); 114.10 (smuggling); and 180.10 (failing to comply with facility visitors guidelines).[2]

Defendants maintain that because Plaintiff never became combative toward Defendants and offered no resistance to the application of the mechanical restraints, Defendants were not required to follow DOCS cell extraction procedure, no force was used and no "Use or Force" or "Unusual Incident" reports were completed in connection

---

[2] The Inmate Misbehavior Report indicates Plaintiff's sister, who visited Plaintiff on February 27, 2004, may have provided Plaintiff with the tobacco products.

with Defendants' removal of Plaintiff from his cell on February 28, 2004.  Plaintiff's

inmate medical records indicate that at no time between February 28, 2004, when

Plaintiff was removed from cell BW-23, and March 3, 2004, when Plaintiff was

transferred out of Attica to Downstate Receiving ("Downstate") on his way to Upstate

Correctional Facility ("Upstate"), did Plaintiff alert the Attica medical staff of any injuries

sustained upon being removed from his cell, despite numerous opportunities to do so.


## DISCUSSION

**1.      Requests for Admissions**

Preliminarily, the court observes that although Plaintiff, on March 22, 2006, filed

Requests for Admissions of Defendants Condon, Liberatore, and Haefner, such

requests were filed after the December 30, 2005 discovery deadline.  Defendants

oppose the requests as untimely.  Siragusa Response Declaration ¶ 3.

Absent any motion by Plaintiff to extend the discovery deadline, properly

supported by cause for such extension as required, *Carnrite v. Cranada Hospital

Group, Inc.*, 175 F.R.D. 439, 447 (W.D.N.Y. 1997), or any motion pursuant to Rule 54(f)

establishing that such discovery is required to oppose summary judgment, the court

declines to treat the request for admissions as a request to extend the discovery

deadline, or to otherwise further entertain the requests in any manner.  Compliance by

*pro se* plaintiffs with the Federal Rules of Civil Procedure in the prosecution of civil

rights complaints is required.   *See Baba v. Japan Travel Bureau Int'l, Inc.*, 111 F.3d 2,

5 (2d Cir. 1997) (*pro se* litigants required to comply with discovery); *McDonald v. Head

Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) (*pro se* litigants

required to comply with court orders).

## 2.     Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (citing cases).  Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary

judgment, if appropriate, shall be entered against the adverse party.

Furthermore, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.  Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).  Here, Plaintiff claims that Defendants violated his Eighth Amendment right against cruel and unusual punishment by using excessive force to extract him from cell BW-23 on February 28, 2004, by denying Plaintiff necessary medical treatment for injuries sustained as a result of the excessive force and, with regard to Sgt. Arnone, by failing, as the superior officer in charge, to intervene to protect Plaintiff from the Defendant Correctional Officers' excessive use of force.

In the instant case, Defendants seek summary judgment on Plaintiff's excessive force and failure to intervene claims, asserting there is no evidence that Defendants subjected Plaintiff to any force in removing Plaintiff from his cell on February 28, 2004. Defendants also seek summary judgment on Plaintiff's claim that he was denied

medical treatment for injuries sustained as a result of the alleged excessive force, on the basis that Plaintiff never sought any treatment for such injuries from Attica's medical staff.

**3.      Eighth Amendment**

The Eighth Amendment prohibits "cruel and unusual punishments" during imprisonment.  U.S. Const. 8th amend.; *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Romano v. Howarth*, 998 F.2d 101, 104 (2d cir. 1993).  Not every governmental action affecting the interests or well-being of a prisoner, however, is subject to Eighth Amendment protections.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Rather, only the unnecessary and wanton infliction of pain constitutes the cruel and unusual punishment forbidden by the Eighth Amendment.  *Id*.  Nevertheless, within the ambit of the Eighth Amendment are protections against the use of excessive force, deliberate indifference to an inmate's serious medical needs, and failure to intervene.  *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003) (observing different tests for evaluating Eighth Amendment claims for excessive force, conditions of confinement, and denial of medical care); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.").

**A.      Excessive Force**

Plaintiff claims that on February 28, 2004, Defendants used excessive force

against him when they crashed open the gate to his cell, BW-23, and physically assaulted and injured him before applying mechanical hand restraints and removing him from the cell.  In assessing an inmate's claims that prison officials subjected him to cruel and unusual punishment by using excessive force, courts must determine whether the prison officials acted "in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). An inmate plaintiff claiming that prison officials subjected him to cruel and unusual punishment by use of excessive force must establish both an objective and subjective component of the claim.  *Romano*, 998 F.2d at 105.

Objectively, a § 1983 plaintiff must establish that the alleged deprivation is sufficiently serious or harmful to reach constitutional dimensions. *Romano*, 998 F.S2d at 104, *see also Wilson*, 501 U.S. at 296.  This objective component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8.  Thus, while a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show that the application of force resulted in any serious injury. *Id.* at 9-10; *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (noting that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").  An inmate's constitutional protection against excessive force by corrections officers "is nowhere nearly so extensive as that afforded by the common law tort action for battery." *Johnson*, 481 F.2d at 1033; *Anderson v. Sullivan*, 702 F.Supp. 424, 426 (S.D.N.Y. 1988).

In the instant case, Defendants filed in support of summary judgment,

Declarations of each Defendant stating that on February 28, 2004, no force was used to remove Plaintiff from his cell.  Arnone Declaration ¶¶ 13-15, 20; Condon Declaration ¶ 8; Haefner Declaration ¶ 8; and Liberatore Declaration ¶¶ 11-12.  Defendants also submit reports of interviews with "Maisonet" ("Maisonet Interview Report") and "Rivera" ("Rivera Interview Report") (Arnone Declaration Exh. E), two inmates housed in Attica's SHU BW gallery on February 28, 2004.  Specifically, on March 26, 2004, Maisonet was interviewed by Sgt. B. Dominic about the February 28, 2004 incident and stated he did not remember anything "unusual."  Maisonet Interview Report at 1.  On March 27, 2004, Rivera was interviewed by Lieutenant J. Bea, admitting that he observed Plaintiff defy Sgt. Arnone's request to place his hands outside the cell, denied hearing any conversation between Defendants and Plaintiff, and observed Defendant Correctional Officers enter Plaintiff's cell and remain there for a matter of seconds prior to removing Plaintiff from the cell.  Rivera Interview Report at 1.  Finally, Defendants submit a copy of a video surveillance tape that does not depict the interior of Plaintiff's cell, but shows what transpired outside the cell when Plaintiff was removed on February 28, 2004.  Arnone Declaration Exh. A.  According to Defendants, the video surveillance tape establishes that Defendants were inside Plaintiff's cell for only 20 seconds, and that Plaintiff emerged from the cell under his own power, walking with no obvious difficulty.

Plaintiff filed in opposition to summary judgment statements made by other inmates housed in neighboring cells in Attica's SHU on February 28, 2004, including, Charles Rivera, Plaintiff's Exh. 4 ("Rivera Statement") and William Hodge, Plaintiff's

Exh. 5 ("Hodge Statement").[3]   In the Rivera Statement, made by the same inmate

interviewed by Sgt. B. Dominic in preparing the Rivera Interview Report,[4] and dated

March 2, 2004, Rivera states that at 8:15 A.M. on February 28, 2004, Sgt. Arnone, while

making her rounds in Attica's SHU, observed a fishing line on the gallery floor, called for

assistance and ordered Plaintiff's cell be searched.  Rivera Statement at 1-2.  Rivera

observed Condon, Haefner and Liberatore push their way into enter Plaintiff's cell and

heard Plaintiff scream during the approximately two minutes the Defendant correctional

officers were inside the cell.  *Id*. at 2.  Rivera heard some shuffling in Plaintiff's cell

before Plaintiff was removed from the cell and taken to the search area.  *Id*.  About two

hours passed before Plaintiff was returned to his cell, at which time Rivera observed an

abrasion on Plaintiff's head.  *Id*.  Rivera asked Plaintiff if he had been assaulted and

Plaintiff responded he had.  *Id*.  In the Hodge Statement,[5] Hodge describes having

witnessed Plaintiff being escorted down Attica's SHU BW gallery on February 28, 2004,

bearing what appeared to be abrasions on his head.  Hodge Statement ¶¶ 2-3.  In

response to Hodge's inquiry, Plaintiff admitted having been assaulted in his cell by the

Defendant Correctional Officers.  *Id*. ¶ 4.

---

[3] Although neither statement is witnessed or notarized, both are made under penalty of perjury. Rivera Statement at 1; Hodge Statement at 1 and 2.  *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (holding statement made "under penalty of perjury" may properly be considered a sworn submission pursuant to 28 U.S.C. § 1746 even absent the statute's exact language).

[4] The court observes that the inmate named "Rivera" who made the Rivera Statement and the inmate named "Rivera" interviewed by Sgt. B. Dominic in preparing the "Rivera Interview Report" have the same assigned prisoner number, *i.e.*, 85-A-7337, establishing that the same inmate was the source of both statements.

[5] The Hodge Statement is not dated.

13

The statements contained in the Rivera Statement and the Hodge Statement that Defendants subjected Plaintiff to force in removing Plaintiff from his cell on February 28, 2004, contradict the Declarations made by each Defendant as well as the Rivera and Maisonet Interview Reports, thereby establishing a genuine issue of material fact as to whether Defendants used force in removing Plaintiff from his cell on February 28, 2004, and the video surveillance tape submitted by Defendants does not negate this issue for several reasons.  First, the court's attempts to view the tape have been futile, revealing only static.  Second, even accepting as true, *arguendo*, Defendants' description of the images depicted on the tape, it would not establish that no force was used in removing Plaintiff from his cell.  In fact, Defendants admit the tape does not depict the inside of cell BW-23, Arnone Declaration ¶ 17 ("Video surveillance shows everything that transpired outside of the cell, but there is no camera inside the cell.").  That the videotape shows "additional officers walking down the gallery and glancing into the cell," before returning to their posts does not, as Defendants assert, establish "that there was no problem."  *Id*.  Rather, such actions by the unidentified "additional officers" only indicate that no further assistance was needed to restrain Plaintiff and remove him from the cell.  Finally, insofar as the videotape may depict Plaintiff walking out of his cell "under his own power and without any difficulty," *id*. ¶ 18, and cooperating with Defendants' directions in searching Plaintiff's person for contraband, *id.* ¶ 19, such imagery cannot definitively establish whether Plaintiff was in pain.

Nor is the fact that Plaintiff's medical records are devoid of any evidence that Plaintiff was injured on February 28, 2004 dispositive of the claim.  Rather, an Eighth

14

Amendment excessive force claim does not require any serious injury. *Hudson*, 503 U.S. at 8; *Johnson*, 481 F.2d at 1028. Furthermore, the record on this motion establishes that when Plaintiff was eventually examined in connection with his complaints following the February 28, 2004 incident on March 6, 2004, one full week later,[6] numerous bruises consistent with Plaintiff's allegations were observed, *see* Plaintiff's Exh. 3 (comprised of four photographs dated March 6, 2004, depicting bruises on Plaintiff's forehead, back and leg as described by Plaintiff), a fact not disputed by Defendants. Had Plaintiff been thoroughly examined before March 6, 2004, the bruises, if sustained on February 28, 2004 in the manner Plaintiff alleges, would likely have appeared more palpable and thus more serious. As stated, the parties dispute whether Plaintiff ever requested medical attention for the alleged injuries. *See*, *e.g.*, Arnone Declaration ¶ 22 (asserting that despite numerous opportunities to do so, Plaintiff never requested any medical attention from Attica's medical staff for injuries allegedly sustained on February 28, 2004); Plaintiff's Declaration ¶ 9 (asserting Defendants denied Plaintiff medical treatment, despite being aware of need for treatment). As such, there is a material issue of fact as to the first prong of Plaintiff's excessive force claim, and the court next considers the second, subjective prong of the claim.

The subjective component of an Eighth Amendment excessive force claim requires that the defendants act malicious and with the intent to harm the inmate plaintiff. *Hudson*, 503 U.S. at 7; *Romano*, 998 F.2d at 105. To determine whether the

---

[6] The court takes judicial notice that because 2004 was a leap year, there were 29 days in February, such that March 6, 2004 was a full seven days after February 28, 2004.

defendants acted maliciously, the trier of fact should consider (1) the extent of the plaintiff's injuries; (2) the need for the application of force; (3) the correlation between the need for force and the amount of force used; (4) the threat reasonably perceived by the defendants; and (5) any efforts made by the defendants to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321.  Here, the record also establishes a material issue of fact as to whether Plaintiff was subjected to the use of any force in being removed from his cell on February 28, 2004, and, if so, whether the use of such force was reasonable.

Specifically, as discussed above, *supra*, at 6, Defendants admit that Plaintiff was handcuffed prior to being removed from his cell on February 28, 2004, but deny any force was used against Plaintiff, in contrast to Plaintiff's allegations, corroborated by Rivera and Hodge, that Defendants kicked, stomped and beat Plaintiff, knocking him to the floor of the cell, and then continued to bash Plaintiff's head against the concrete floor of his cell while Plaintiff remained handcuffed and unable to protect himself. Defendants' assertion that no force was used implies that any threat posed by Plaintiff was small, such that any use of force by Defendants could be disproportionate. *See Anderson*, 702 F.Supp. at 427 (holding no Eighth Amendment excessive force claim where force used was not significantly disproportionate to legitimate penological goal of handcuffing inmate for transport within facility).  It is significant that Defendants do not challenge the accuracy or authenticity of either the Rivera or Hodge Statements, particularly in light of the fact that the Rivera Statement was prepared on March 2, 2004, both before Plaintiff was transferred from Attica and a full three weeks before Rivera was interviewed by Sgt. B. Dominic, and despite the fact that the Rivera

Statement is largely inconsistent with the Rivera Interview Report.  Furthermore,

Plaintiff's medical records establish that after being examined on March 6, 2004, albeit

at Upstate, Plaintiff was treated for low back pain.  Plaintiff's Exh. 6.  This unresolved

factual issue as to the subjective prong of Plaintiff's excessive force claim is not only

material, but also sufficient to preclude summary judgment.

Summary judgment on Plaintiff's excessive force claim arising from the February

28, 2004 incident should be DENIED.


### B.      Failure to Intervene

Defendants seeks summary judgment with respect to Plaintiff's claim that Sgt.

Arnone, as the superior officer at the scene, failed to intervene to prevent the

Defendant Correctional Officers from using excessive force on February 28, 2004,

arguing that Sgt. Arnone had no duty to intervene because Defendant Correctional

Officers used no force, let alone excessive force, to remove Plaintiff from the cell.

Defendants' Memorandum at 7-8.  The existence of a material issue of genuine fact as

to whether Plaintiff was subjected to excessive force in being removed from his cell on

February 28, 2004, however, also precludes summary judgment in Defendants' favor on

the failure to intervene claim because Arnone was present and thus aware of any need

to intervene.  *See Thompson v. Tracy*, 2007 WL 4145466, * 5 (S.D.N.Y. Oct. 31, 2007)

(holding material issue of fact requiring denial of defendant's motion for summary

judgment on excessive force claim also required denial of summary judgment on failure

to intervene claim).

Summary judgment on Plaintiff's failure to intervene claim should be DENIED.

17

C.      **Deliberate Indifference to Serious Medical Need**

Defendants also seek summary judgment insofar as Plaintiff alleges Defendants were deliberately indifferent to Plaintiff's serious medical needs following the February 28, 2004 incident, arguing that even if Plaintiff did sustain the alleged injuries, such injuries were not sufficiently severe to sustain the objective component of an Eighth Amendment deliberate indifference claim.  Defendants' Memorandum at 8-10. Defendants further maintain that the absence of any prison records establishing Plaintiff actually requested, but was denied, medical attention also fails to sustain the subjective component of such claim.  *Id.* at 10-11.

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (bracketed text in original)).  A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Chance*, 143 F.3d at 702.  The standard for determining whether there has been an Eighth Amendment violation based on deliberate indifference to a prisoner's serious medical needs

> incorporates both objective and subjective elements.  The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison officials acted with a sufficiently culpable state of mind.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 104, and *Hathaway v. Coughlin*, 99 F.3d 550. 553 (2d Cir. 1996)).

Denying or delaying access to medical care or intentionally interfering with prescribed treatment may constitute deliberate indifference.  *Estelle*, 429 U.S. at 104;

18

*see Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (holding dentist's outright refusal for one year to treat a cavity, a degenerative condition tending to cause acute pain if left untreated, combined with imposition of an unreasonable condition on such treatment, could constitute deliberate indifference on the part of the prison dentist, precluding summary judgment in defendant's favor).  Such delay in treatment violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle*, 429 U.S. at 104-05.  Further, culpable intent requires the inmate establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm."  *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994)). Nevertheless, neither "inadvertent failures to provide adequate medical care" nor "negligence in diagnosing or treating a medical condition" comprise Eighth Amendment violations.  *Estelle*, 429 U.S. at 105-06 (holding medical malpractice does not become a constitutional violation merely because the victim is a prisoner); *Harrison*, 219 F.3d at 139 ("We agree that the mere malpractice of medicine does not amount to an Eighth Amendment violation.").  Nor does a "mere disagreement" with a physician over the appropriate course of treatment arise to a constitutional violation, although in certain instances a physician may evince deliberate indifference by consciously choosing "an easier and less efficacious" treatment plan.  *Chance*, 143 F.3d at 703.

As to the objective prong, a sufficiently serious condition is "a condition of

urgency, one that may produce death, degeneration or extreme pain." *Hathaway*, 99 F.3d at 66.  In the instant case, the record is devoid of any evidence establishing that Plaintiff, in being removed from his cell on February 28, 2004, had any medical urgency that might produce death, degeneration or extreme pain.  Rather, the record demonstrates that any injuries sustained in connection with the incident were relatively minor given that they were not detected by Plaintiff during the examination Plaintiff underwent upon his arrival, on March 5, 2004, at Upstate.  Arnone Declaration ¶ 24.  It is significant that Plaintiff does not deny being examined upon arriving at Upstate, and that even after such examination, he waited an additional day, until March 6, 2004, to complain about his injuries.  *Id*.  As such, assuming, *arguendo*, that on February 28, 2004, Plaintiff did in fact suffer the alleged injuries, including bruises and pain, Complaint ¶¶ 5-8, such injuries do not constitute the requisite "serious medical condition" necessary to establish an Eight Amendment deliberate indifference claim. *Compare Hemmings v. Gorczyk*, 134 F.3d 104, 109 (2d Cir. 1998) (reversing district court's grant of summary judgment in favor of defendants on inmate plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim where inmate suffered from ruptured Achilles tendon, which remained swollen and painful, requiring plaintiff use crutches to walk, which was originally diagnosed as a bad sprain, yet defendants failed for two months to provide proper treatment despite fact that plaintiff's disabling condition was "easily observable").  That the record is devoid of any evidence establishing that Plaintiff's alleged injuries were exacerbated by the failure to receive any treatment for the alleged injuries until March 6, 2004, further undermines Plaintiff's asserted denial of urgent medical care.  The record thus fails to establish any factual

issue which, if decided in Plaintiff's favor, could establish the objective prong of Plaintiff's deliberate indifference claim with regard to the February 28, 2004 incident.

Because Plaintiff has failed to establish the objective prong for his deliberate indifference claim as to the February 28, 2004, incident, the court need not address whether Plaintiff can establish the subjective prong as to either incident.  Nevertheless, because the matter is before the court for a Report and Recommendation, the court, in the interest of completeness, also addresses whether Plaintiff has met the subjective component of his claim.

As to the subjective component, should the District Judge find that Plaintiff has sustained the objective component, *i.e.*, that the injuries sustained by Plaintiff in being removed from his cell on February 28, 2004 were sufficiently serious as to constitute "a condition of urgency, one that may produce death, degeneration or extreme pain," *Hathaway*, 99 F.3d at 66, then the dispute between the parties as to whether Plaintiff did request, but was denied, medical treatment for such injuries, precludes summary judgment as to this element of the claim.

Summary judgment as to Plaintiff's claim that Defendants acted with deliberate indifference to his serious medical needs should be GRANTED insofar as Plaintiff has failed to sustain the objective component of the claim; alternatively, summary judgment should be DENIED insofar as a genuine issue of material facts exists as to the subjective component of the claim.

**4.     Qualified Immunity**

Alternatively, Defendants assert they are entitled to qualified immunity on all

claims for damages.  Defendants' Memorandum at 11-13.  Plaintiff has not responded

to this argument.  Because the matter is before the court for Report and

Recommendation, although the undersigned is recommending granting summary

judgment on Plaintiff's claim alleging deliberate indifference to his serious medical

needs, the court addresses the qualified immunity argument with regard to all of

Plaintiff's Eighth Amendment claims, including excessive force, failure to intervene, and

deliberate indifference to Plaintiff's serious medical needs.

Qualified immunity shields law enforcement officials who perform discretionary

functions from liability if their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable prison official would have known.  *Harlow v.

Fitzgerald*, 457 U.S. 800, 806 (1982); *Washington Square Post No. 1212 v. Maduro*,

907 F.2d 1288, 1291 (2d Cir. 1990).  Even if the right at issue were clearly established,

if it was objectively reasonable for the defendant to believe that his act did not violate

the plaintiff's constitutional rights, the defendant may nevertheless be entitled to

qualified immunity.  *Saucier v. Katz*, 533 U.S.194, 201-02 (2001); *Anderson v.

Creighton*, 483 U.S. 635, 641 (1987); *Lowth v. Town of Cheektowaga*, 82 F.3d 563,

568-69 (2d Cir. 1996); *Van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d

863, 865-66 (2d Cir.1990); *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987).  "The

availability of the defense depends on whether a reasonable officer could have believed

his action to be lawful, in light of clearly established law and the information he

possessed."  *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir.1996) (internal quotation marks

omitted).

A right is clearly established if (1) it was defined with reasonable specificity, (2)

its existence has been affirmed by either the Supreme Court or the relevant court of appeals, and (3) a reasonable defendant official would have understood under the existing law that his acts were unlawful.  *Brown v. City of Oneonta, N.Y. Police Dep't*, 106 F.3d 1125, 1131 (2d Cir. 1997).  In the instant case, Plaintiff's Eighth Amendment rights protecting him from excessive use of force and the deliberate indifference to Plaintiff's serious medical needs, as well as imposing on Defendant Sgt. Arnone an affirmative duty to intervene, were all defined with reasonable specificity by the Second Circuit as of February 28, 2004.  *See Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003) (observing different tests for evaluating Eighth Amendment claims for excessive force, conditions of confinement, and denial of medical care); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their present.").

Nevertheless, if it was objectively reasonable for a defendant to believe that his actions did not violate the plaintiff's constitutional rights, the defendant may be entitled to qualified immunity.  *Robison*, 821 F.2d at 920-21.  In particular, a defendant is entitled to summary judgment based on qualified immunity if the court finds that the asserted rights were not clearly established, or "if the defendant adduce[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not violate a federally protected right." *Robison*, 821 F.2d at 921 (internal quotation omitted).  Stated another way, a defendant is entitled to qualified immunity

under the objectively reasonable standard if "officers of reasonable competence could disagree" on the legality of the defendant's actions.  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment based on qualified immunity is properly denied. *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991); *Brawer v. Carter*, 937 F.Supp. 1071, 1082 (S.D.N.Y. 1996).  Provided that no factual issues are disputed, the application of qualified immunity to the facts is a question of law for the court to decide. *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990).

In the instant case, insofar as the existence of disputed issues of material fact preclude summary judgment on Plaintiff's claims, those same disputed issues of fact also prevent the court from recommending finding Defendants are qualifiedly immune from liability on such claims.  Accordingly, determination of Defendants' qualified immunity defense must await a fact trier's resolution of the questions of fact presented. Summary judgment based on qualified immunity should therefore be DENIED.

**<u>CONCLUSION</u>**

Based on the foregoing, Defendants' motion (Doc. No. 24) should be DENIED as to Plaintiff's excessive force and failure to intervene claims, and, as to the deliberate indifference to serious medical need claim, should be GRANTED insofar as Plaintiff has failed to sustain the objective component of the claim or, alternatively, summary judgment should be DENIED insofar as a genuine issue of material facts exists as to the subjective component of the claim; as a further alternative, summary judgment based on qualified immunity should be DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November   28   , 2007
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the

Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of

Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*,

892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys

for the Plaintiff and the Defendants.

SO ORDERED.


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:       November 28, 2007
             Buffalo, New York